UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHARLES DEAL #363863     CIVIL ACTION NO. 19-cv-0059

VERSUS     JUDGE FOOTE

JAMES LEBLANC, ET AL     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Charles Deal ("Plaintiff") is a self-represented inmate who was once housed at the David Wade Correctional Center ("DWCC"). He filed this civil action against several law enforcement and corrections officials based on allegations that (1) some of them wrongfully denied him the opportunity to attend a criminal court hearing and (2) he was subjected to excessive force while being placed in administrative segregation.

The court earlier dismissed all claims against Lt. Carter for failure to state a claim. Docs. 22 & 28. Now before the court are motions for summary judgment (Docs. 33, 35 & 41) by the eight remaining defendants—Sheriff Ken Bailey, Debbie McBeth, Brenda Acklin, Vincent Coleman, Jerry Goodwin, Sally Gryder, Angie Huff, and James LeBlanc. For the reasons that follow, it is recommended that all three motions be granted and all of Plaintiff's remaining claims be dismissed.

### Summary Judgment Burdens

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a). A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986)).

Where the plaintiff bears the burden of proof at trial, the moving defendant satisfies his initial burden by demonstrating an absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). The burden then shifts to the plaintiff to go beyond his pleadings and show by competent summary judgment evidence specific facts showing that there is a genuine issue for trial. He cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Celtic Marine Corp. v. James C. Justice Companies, Inc., 760 F.3rd 477, 481 (5th Cir. 2014).

**Missing the Hearing; Access to Courts**

Plaintiff was charged in Rapides Parish with two counts of attempted first degree murder. He entered a plea bargain in 2007 and entered a guilty plea to an amended charge of two counts of attempted second degree murder. The sentencing range on each count was 10 to 50 years. Plaintiff was sentenced to 25 years on each count, to be served concurrently. He later filed a post-conviction application, and it was denied. In 2017, ten years after the convictions, he filed a motion to correct illegal sentence that is at the heart of this litigation.

Plaintiff argued in his motion to correct illegal sentence that the bill of information was defective because it did not "state any facts[,] such as a dangerous weapon." He also asserted a claim of ineffective assistance of counsel. A Rapides Parish judge issued an

order that the DWCC warden transport Plaintiff for a scheduled hearing on September 14, 2017. The order indicates that a copy was sent to Plaintiff, the DA, and the Rapides Parish Sheriff. Doc. 33-5.

Plaintiff received a copy of the order in his mail at DWCC. He wrote the recorder department at DWCC, and Brenda Acklin responded that the office had not received an order for the appearance. Sally Gryder, in the same office, later told Plaintiff that they were aware of the hearing but required an order signed by the judge. Plaintiff obtained a copy of the order and took it to the recorders department, but Ms. Gryder told him DWCC would not honor an order provided by an inmate; it must come from the court.

Plaintiff wrote a slew of letters to several officials about his effort to get to court. Among them was a letter to the Rapides Parish Sheriff. The sheriff's CAO Debbie McBeth wrote in reply that she looked into it and found that Rapides had sent the court order to the Claiborne Parish Sheriff to serve it on DWCC (which is in Claiborne Parish). Plaintiff alleges that he wrote or had a relative call the office of Claiborne Parish Sheriff Ken Bailey several times, but he got no reply.

Plaintiff was not taken to court on the scheduled date. His former defense counsel did appear, but he just filed a motion to withdraw (that was granted). The court dismissed Plaintiff's motion. Plaintiff soon filed a motion for rescheduling, an amended motion for rescheduling, and letters that asked the court to reset the motion. Judge Thomas Yeager issued a written decision in January 2018. He acknowledged Plaintiff's requests to reschedule but elected to "rule on the motion without a hearing." Judge Yeager then denied the motion to correct illegal sentence on the merits because the bill of information was not

defective, the guilty plea waived any such non-jurisdictional defects, the sentence was lawfully within the statutory range, and the motion was really an untimely and successive post-conviction application. He also specifically denied the motions and letters that asked for the hearing to be reset.

Plaintiff demands that Acklin, Gryder, McBeth and Bailey be held liable because they made him miss his court date. DWCC employees Acklin and Gryder testify in affidavits that they followed DWCC policy of requiring a court order be served on the prison, informed Plaintiff of the requirement, and did not intentionally interfere with Plaintiff's ability to attend the hearing. Rapides CAO McBeth testifies in an affidavit that her duties do not include sending or providing notices of hearing, but she does respond to requests for information. All she did in this case was respond to Plaintiff's letter by writing to let him know the sheriff's staff had followed the standard practice of mailing the order to Claiborne Parish for service. Claiborne Parish Sheriff Bailey's chief civil deputy testifies in an affidavit that she oversees service of court orders. Despite a diligent search, she has no record of Claiborne receiving the order from Rapides.

Plaintiff asserts that these defendants denied him access to the courts. A prisoner's right to access the courts encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Johnson v. Rodriguez, 110 F.3d 299, 310–11 (5th Cir. 1997). To prevail on a denial-of-access claim, an inmate must demonstrate *actual injury* by showing that officials or prison conditions hindered his efforts to pursue a *nonfrivolous* legal claim. Christopher v.

Harbury, 122 S.Ct. 2179 (2002); Lewis v. Casey, 116 S.Ct. 2174, 2180-81 (1996); Alexander v. Texas Dep't of Criminal Justice, 951 F.3d 236, 239 (5th Cir. 2020).

The state court denied Plaintiff's motion to correct illegal sentence because it was wholly lacking in merit, not even warranting a live hearing, and there is no indication that Plaintiff appealed the ruling. Because Plaintiff's motion did not assert a nonfrivolous legal claim, Plaintiff cannot show actual injury stemming from his inability to attend the originally scheduled hearing. Summary judgment is warranted for all defendants who are accused of mishandling the order regarding the hearing. McCoy v. Harmon, 738 Fed. Appx. 326 (5th Cir. 2018) (prisoner claimed denial of access because officials would not let him listen to a recorded oral argument in his § 2255 appeal; lack of merit in motion for rehearing was fatal to his access claim).

Plaintiff asks for more time to investigate what happened to the order. He points to Rapides saying they sent the order to Claiborne, and Claiborne saying they never received it, and concludes that someone is not telling the truth. But it may be that the order was lost in the mail or honestly lost or misplaced during processing in either sheriff's office. In any event, Plaintiff was allowed ample time for discovery before motion practice began. The movants offer testimony that they did not act intentionally, and Plaintiff offers no competing summary judgment evidence. Plaintiff accuses the officials of negligence, but that does not state a claim under § 1983. Daniels v. Williams, 106 S.Ct. 662 (1986) (negligence cannot support § 1983 action for violation of due process); Bramlett v. Woodburn, 449 Fed. Appx. 384, 385 (5th Cir. 2011) (affirming dismissal of § 1983 claim against state court clerk for negligently failing to timely notify prisoner of a judgment).

Defendants Acklin, Gryder, McBeth, and Bailey are entitled to summary judgment on the merits. It is not necessary to address their other defenses, which include exhaustion, prescription, and qualified immunity. The remaining claims are against (1) Vincent Coleman for excessive force and (2) Secretary Leblanc, Warden Goodwin, and Asst. Warden Huff for supervisory liability.

**Vincent Coleman; Excessive Force**

    **A. Allegations and Affidavits**

Plaintiff alleges that DWCC officer Vincent Coleman twice sprayed him in the face with chemical spray while Plaintiff was fully restrained and compliant. Coleman admits spraying Plaintiff but claims is was warranted. This incident began when, as Plaintiff alleges in his amended complaint (Doc. 7), he spoke to classification officer Deborah Cody after he was not taken to his court hearing. Ms. Cody told Plaintiff that he needed to file a motion to obtain a court order for his transport. When Plaintiff replied, "I done that already," Ms. Cody "blew up and wrote me up for defiance stating I was talking over her." Plaintiff was ordered to be placed on lockdown.

Plaintiff alleges in his complaint that, when he arrived at the N3 housing unit for lockdown, he "asked with respect" to be placed in a cell by himself, but "Lt. Carter stated you will go where the fuck we put you." Plaintiff alleges that he "stated to Lt. Carter that he can't force me to go in a cell with someone." His next allegation is that Major Coleman arrived and told Plaintiff to shut up before Coleman sprayed him. Plaintiff allegedly told him to go ahead, and Coleman then allegedly dragged Plaintiff to an area where there were no witnesses. Their confrontation continued until Coleman allegedly twice sprayed

Plaintiff with chemical spray while Plaintiff was "in full restraints helpless on my knees." Plaintiff alleges that he was given a hot shower that burned his skin, and he was denied medical care until sick call the next day.

Major Vincent Coleman (since promoted to Lt. Col.) testifies in an affidavit that he and Capt. John Huey were tasked with placing Plaintiff in segregation in the N3 housing unit. Plaintiff became loud and refused orders to cease his actions. Lt. Carter gave Plaintiff a direct verbal order to cease his actions, but Plaintiff refused to comply and kept yelling, "I'm not going into the cell with anybody." Coleman testifies that he also gave Plaintiff a direct verbal order to cease his actions. Plaintiff refused to comply with all of Coleman's orders. Coleman says that the N3 lobby was filled with other offenders, so he ordered Plaintiff to be brought to the N4 Housing Unit.

Coleman testifies that Plaintiff, while being escorted to N4, kept yelling "Fuck you bitch!" Once in the lobby of N4, Coleman ordered Plaintiff to kneel down, and Plaintiff complied. Plaintiff then began yelling and cussing stating, "Fuck you bitch, you riding with that pussy ass shit that woman said." Coleman gave Plaintiff a direct verbal order to cease his actions, and he refused to comply. Plaintiff was told that chemical agents would be administered if he did not cease his actions. Plaintiff kept yelling and cussing. Coleman says that Plaintiff became so loud and boisterous that he created an unsafe environment, making it difficult for officers to properly monitor the tiers.

Coleman testifies that, because of Plaintiff's actions, he administered a short burst of chemical agent to Plaintiff's face and head area. Plaintiff then began yelling, "We fixing to do this shit all day," and he began spitting. Coleman gave Plaintiff a direct verbal order

to stop spitting or a chemical agent would be administered again. Plaintiff refused to comply, so Coleman administered another short burst of chemical agent to Plaintiff's face and head area. Once the chemical agent took effect, Plaintiff complied with all orders.

Video recording equipment was available at the prison, and Coleman implies that he or someone requested it. Captain John White arrived with equipment, but it was after the chemical spray had been administered. Coleman testifies that he told White to start recording. Coleman states that he believed, due to the immediate need to restore order and gain compliance, that it was not feasible to retrieve the video recording equipment before administering the spray.

Capt. Huey offers an affidavit that corroborates Coleman's account. Huey adds that he notified medical personnel of the incident. Nurse Williams arrived and offered Plaintiff an eye wash, but he refused. Plaintiff was offered a shower, and he accepted. After showering, Plaintiff was given a clean jumpsuit and escorted to a cell without further incident.

### B. Applicable Law

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).

The focus of the standard is on the corrections official's subjective intent to punish, and his intent is determined by reference to certain well established Hudson factors: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible official, and (5) any efforts made to temper the severity of a forceful response. Cowart v. Erwin, 837 F.3d 444, 453 (5th Cir. 2016). The Hudson standard applies with equal force to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004). Each case is judged on its own facts, after considering the non-exclusive factors listed above. Baldwin, 137 F.3d at 839.

### C. Analysis

Plaintiff alleges that the spray was used on him for no legitimate reason while he was restrained on his knees. Major Coleman presents a different version of the facts, with the use of chemical agent warranted by Plaintiff's repeated outbursts despite multiple orders, and a need to restore order in the area to allow safe supervision of the other inmates. Plaintiff's version of the facts may plead an actionable claim. McCoy v. Alamu, 950 F.3d 226, 231 (5th Cir. 2020) (chemical spray in the face for no reason but a desire to harm the prisoner states a claim under Hudson).

But Major Coleman's facts govern because he supported them with competent summary judgment evidence, and Plaintiff relies on nothing by his unsworn complaint and memoranda. Coleman met his initial summary judgment burden, but Plaintiff did not respond with any competent evidence that would create a genuine dispute of a material

fact. "A party opposing a properly supported summary judgment motion may not rest on mere allegations contained in the pleadings to demonstrate a genuine issue of material fact." Frazier v. Keith, 707 Fed. Appx. 823, 825 (5th Cir. 2018) (affirming summary judgment for prison officials). "Even pro se litigants may not oppose summary judgment motions with unsworn materials." Turner v. Baird, 707 Fed. Appx 290, 291 (5th Cir. 2017), citing Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980).

Turner affirmed this court's grant of summary judgment for this same prison official, Vincent Coleman, in a case where the prisoner alleged Coleman sprayed him three times for no reason while he was restrained. Coleman presented summary judgment evidence that it was only one spray to quiet a loud disturbance after several orders were ignored, and the spray was followed quickly by attention from the nursing staff and a shower. Given the lack of competing evidence and applicable law, Coleman prevailed. Turner v. Baird, 2016 WL 7421411 (W.D. La.) (Hornsby, M.J.), adopted, 2016 WL 7441710 (W.D. La.) (Walter, J.), aff'd, 707 Fed. Appx 290 (5th Cir. 2017).

The same result is warranted in this case. The facts presented in Coleman's summary judgment evidence would not allow a reasonable jury to apply the Hudson factors and find that Coleman applied the spray maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. The injury was painful, but temporary and capable of prompt relief by the offered eye wash, shower, and clean clothes. Coleman explained the need to maintain order in the unit to allow adequate monitoring of the other prisoners, and Plaintiff ignored multiple orders to comply before Coleman resorted to the spray. Coleman first used only a single burst, and he applied the second

only after Plaintiff refused to comply and continued his disruption. Plaintiff may have been restrained, but that does not automatically foreclose the use of reasonable force if the prisoner is causing a disturbance and refuses all orders to cease. Rich v. Palko, 920 F.3d 288, 294 (5th Cir.), cert. denied, 140 S. Ct. 388 (2019) (officers granted summary judgement on excessive force claim by handcuffed mental patient who continued to spit on officers and refused to comply with orders to stop).

Coleman also asserts qualified immunity. When an officer invokes that defense, the burden shifts to the plaintiff to rebut it by establishing a genuine dispute as to whether the official's allegedly wrongful conduct violated a constitutional right and the unlawfulness of the conduct was clearly established at the time. Rich, 920 F.3d at 294; Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). The Fifth Circuit held in February 2020 that, before that date, it was not clearly established that it violated the Eighth Amendment for a prison officer to apply a single burst of pepper spray to the face of an inmate in his cell, for no reason at all, followed by availability of water. McCoy, 950 F.3d at 233-34. Given that holding, and Coleman's undisputed evidence regarding this 2017 event, his qualified immunity defense is likely valid as an alternative basis for summary judgment.

**Supervisors**

The final defendants are DOC Secretary James LeBlanc, Warden Jerry Goodwin, and Asst. Warden Angie Huff. Plaintiff alleges with respect to these defendants that he filed grievances "to no avail." But a prisoner "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d

371, 374 (5th Cir. 2005). And "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Id. at 374.

These defendants cannot be held liable simply because they are supervisors. In claims brought under § 1983, "there is no vicarious liability for supervisors for the conduct of their subordinates," and they cannot be held liable absent "personal involvement or some other form of causation to connect the supervisor to the violation." Marks v. Hudson, 933 F.3d 481, 490 (5th Cir. 2019). There is no such personal involvement alleged in this case.

Furthermore, "an underlying constitutional violation is required to impose liability on the governmental body or supervisory liability …." Baughman v. Hickman, 935 F.3d 302, 311 (5th Cir. 2019). See also City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986) (lack of claim against police officer removed any basis for liability against city and members of police commission). It was found above that none of the other defendants violated Plaintiff's constitutional rights, so there can be no claim against these defendants.

Plaintiff alleges that these defendants "implemented or supported policies which allowed the denial of me not being transported to my court hearing" and "me being abused by Major Coleman . . . ." Plaintiff does not point to or articulate any particular policies, and "a plaintiff cannot avoid summary judgment merely by asserting the legal conclusion that an unconstitutional policy existed." Taylor v. Stevens, 946 F.3d 211, 227 (5th Cir. 2019). And, as noted above, the lack of an underlying claim defeats such a claim against supervisory officials. Summary judgment is recommended on the merits of the underlying claims, so any supervisor liability claims against these officials should also be dismissed.

Accordingly,

It is recommended that the defendants' motions for summary judgment (Docs. 33, 35 & 41) be granted and that all claims against all remaining defendants be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of April, 2020.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE